DAVID R. FISCHER, ESQ.
Nevada Bar No. 10348
LAW OFFICE OF DAVID R. FISCHER
400 South 4th Street, Suite 500
Las Vegas, Nevada 89101
Telephone: (702) 547-3944
admin@fischerlawlv.com
*Attorney for Defendant*

---

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>vs.<br><br>ROGER LINARES,<br><br>               Defendant. | Case No. 2:15-cr-099-JCM-VCF<br><br>**SENTENCING MEMORANDUM**<br>**FOR ROGER LINARES** |

Defendant, Roger Linares (hereinafter 'Mr. Linares'), by and through his attorney, David R. Fischer, Esq., respectfully submits this Sentencing Memorandum. Mr. Linares prays for an order of probation, or, in the alternative, a split sentence of six months in custody, followed by six months of home confinement. Mr. Linares's upstanding moral character, his acceptance of responsibility for his actions, his strong family ties and devotion to his children, and the non-violent nature of the crime, all demonstrate that probation is the appropriate punishment herein.  *See* 18 U.S.C. § 3553(a).

      DATED October 12, 2016.

                              LAW OFFICE OF DAVID R. FISCHER

                                /s/ David R Fischer
                              DAVID R. FISCHER, ESQ.
                              *Attorney for Defendant*

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Before the Court is Roger Linares, a non-violent, first time white collar offender, who has pled guilty Count I, Conspiracy to Defraud the United States Government, 18 U.S.C. § 371, a class D Felony, which carries a possible penalty of not more than 5 years' imprisonment and or a $250,000 fine.   Mr. Linares has no prior criminal convictions or arrest history.[1] Mr. Linares acknowledges that this Court will consider the calculated offense level contained within the PSR in determining Mr. Linares' sentence. Mr. Linares understands that the sentencing Guidelines are advisory, and this Court has discretion to impose any reasonable sentence up to the maximum term permitted by statute. Finally, Mr. Linares further acknowledges that if this court deems a guidelines sentence as appropriate punishment herein, his offense level could be a 13, as recommended by the Guilty Plea Agreement, or a 15, as recommended by the PSR.

Mr. Linares is 43-year-old and was born in Lima, Peru.  He became a naturalized United States Citizen on August 22, 2008.     Mr. Linares earned a Bachelor's Degree in Agricultural Engineering from the University of La Molina, Lima, Peru, in 1997.[2]

Mr. Linares has a solid and steady employment record dating back to 2004. Mr. Linares is currently full time employed as a 1099 contract employee with Security National Mortgage and averages $2,400 per month.  He has worked in this capacity since October 2015.

Mr. Linares has strong family ties and has siblings that reside here in Henderson, Nevada and also Pasadena, California.  Mr. Linares' father is 79 and resides in Pasadena, California.   Mr. Linares has been to Maria Isabella Shimabuku Saenz since October 14, 2015. His wife is a homemaker and is expecting their first child.  Mr. Linares and his wife reside in a two bedroom, two-bathroom apartment located at 1801 N. Green Valley Parkway, Apt. 1223,

[1] *See* PSR, ¶36.
[2] *See* PSR, ¶55.

Henderson, Nevada.  According to Probation, a home inspection of the residence revealed it was suitable for community supervision.[3]  Mr. Linares has other young children that live with their respective mothers in Pasadena, California and in Lima, Peru.  He maintains a good relationship with them and is responsible for a total of $1,025 per month for their child support.[4]

Mr. Linares cooperated with the Government herein by accepting responsibility and entering a timely plea to Count 1 - Conspiracy to Defraud the United States in violation of 18 U.S.C. § 371.[5]

Pursuant to 18 U.S.C. §3561(c)(1), Mr. Linares is probation eligible. Accordingly Mr. Linares pleads with this court, after a consideration of the factors contained in §3553(a), to grant him probation.

A grant of probation herein is consistent with §3553(a), inasmuch as it reasonably provides just punishment, protects the public, promotes respect for the law, affords adequate deterrence and promotes rehabilitation. Further, a grant of probation is supported by empirical data provided by the United States Sentencing Commission for same or similar offenses in the United States Ninth Circuit.  This data is provided to achieve the goal of 18 U.S.C. §§ 3553(a)(G), which is to avoid "unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct."

## II.   PROCEDURAL HISTORY AND SENTENCING GUIDELINES

On April 7, 2015, a 39-Count Criminal Indictment was filed against multiple defendants including Mr. Linares.[6]  On May 24, 2016, Mr. Linares knowingly and voluntarily agreed to plead guilty to Count 1:  Conspiracy to Defraud the United States in violation of 18 U.S.C. §

---

[3] *See* PSR, ¶43.
[4] *See* PSR, ¶¶45-49.
[5] *See* PSR, ¶2.
[6] ECF 1.

371.[7]  And on July 14, 2016, Linares appeared before this Court and pleaded guilty to the Count I.[8]  Pursuant to the written plea agreement and Rule 11(c)(1)(A) the government agreed to dismiss the remaining 39 counts after the sentencing.

Per the plea agreement, the government applied the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") which are advisory and not mandatory, and which this Court must consider as a factor in determining Mr. Linares' sentence. The Government and Mr. Linares stipulated the following calculation of Defendant's offense level under these sentencing guidelines and acknowledge that these stipulations do not bind this Court and agreed that neither party will seek to apply any other specific offense characteristic, enhancement, or reduction under the USSG.

| | |
|---|---|
| Base offense level: | 16 |
| Acceptance of responsibility. USSG §3E1.1(a): | -2 |
| Acceptance of responsibility and assistance.  USSG §3E1.1(b): | -1 |
| **Total Offense Level:** | **13** |

Based on the Sentencing Guidelines provisions applied by the government, Mr. Linares, having no criminal history is placed in the Criminal History Category 1, with an offense level of 13, and within the guideline imprisonment range of **12 – 18 months**.

The United States Probation Office has completed a Pre-Sentence Investigative Report and has recommended the following:

| | |
|---|---|
| Base offense level: | 16 |
| Adjustment for Role in the Offense.  USSG §3B1.1(c): | +2 |
| Acceptance of responsibility. USSG §3E1.1(a): | - 2 |
| Acceptance of responsibility and assistance.  USSG §3E1.1(b): | - 1 |

[7] ECF 68.
[8] ECF 68.

**Total Offense Level:**                                          **15**

This offense level of 15, for a defendant with no criminal history and placed in the Criminal History Category 1, the guideline imprisonment range as applied by the Probation Office is **18 – 24 months.** [9]

Revealed in the investigation by the Internal Revenue Service (IRS), Mr. Linares aided and assisted in the preparation of at least 18 false federal individual tax returns (Form 1040) for his clients and created itemized inflated expenses and deductions which resulted in refunds for his clients.  The tax loss caused by these 18 tax returns created by Mr. Linares totaled $46,296 for the 2008 and 2009 tax years.  The other conspirators, Acosta, Dominguez, and Quintero, including Mr. Linares, are responsible for a total tax loss of $181,818.  Both the Government and the Pre-Sentence Investigation Report call for restitution of this amount.

## III.   LEGAL ARGUMENT

*"[A] sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment."*[10]

In *U.S. v. Booker*, 543 U.S. 220 (2005), the United States Supreme Court held that the sentencing guidelines are advisory only, not mandatory.[11] Two years later, in *Gall v. United States*, 128 S. Ct. 586 (2007), the Court emphasized that sentencing judges do not need extraordinary reasons to sentence a defendant outside the guidelines range.  ***This includes the decision of a court to impose a probationary sentence.***

In a companion case, *Kimbrough v. United States*, the Court further loosened the reins on sentencing courts by allowing them to depart from the Guidelines recommended sentences

---

[9] PSR, ¶ 12.
[10] *Gall v. United States,* 128 S. Ct. 586, 599 (2007) (internal quotation omitted) (quoting with approval a district court's reason for departing down from the guideline range to impose a sentence of probation in a case involving distribution of ecstasy).
[11] *Id.*

even when they do so because of a disagreement with a policy decision by the sentencing commission.[12]   In *Kimbrough*, the sentencing court refused to accept the 100-to one ratio disparity between the guidelines then applicable to crack versus powder cocaine offenses.[13] Writing for the Court, Justice Ginsberg began her opinion by reiterating that, "the Guidelines, formerly mandatory, ***now serve as one factor among several courts must consider in determining an appropriate sentence***."[14]   Justice Ginsburg concluded for the Court that the ultimate decision is whether a sentence was "reasonable" and, if a sentencing judge reasonably assesses the circumstances in the case, ***the judge is not locked into the guidelines and is free to disagree with the guideline ranges***.[15]

A sentencing court is also not required to use a formulaic approach yielding a mathematical justification of non-Guidelines sentences.[16] Instead, this Court must exercise "reasoned sentencing judgment, resting upon an effort to filter the Guidelines' general advice through § 3553(a)'s list of factors."[17]   Additionally, the sentencing judge may not presume that the guidelines sentence is reasonable even in so-called "mine-run" cases.[18]

Therefore it is clear that the district court has very broad sentencing discretion, limited only by reasonableness and the duty is to impose the least amount of time necessary to achieve §3553(a)'s purposes.   As discussed below, a grant of probation is reasonable, especially for a first time white collar offender, who has accepted responsibility for his crime, respects the law as shown by his expressed remorse, is gainfully employed, and has strong family ties and responsibilities.

---

[12] *Kimbrough v. United States*, 128 S. Ct. 558 (2007).
[13] *Id*.
[14] *Id*. at 576.
[15] *Id*. at 564.
[16] *Gall v. United States*, 128 S. Ct. 586, 596 (2007).
[17] *Rita v. United States*, 551 U.S. 338, 351 (2007).
[18] *See Id; see also United States v. Crawford*, 520 F.3d 1072, 1076 (9th Cir. 2008).

1

2

### A. Section 3553(a)(1): The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

Mr. Linares has led an otherwise exemplary life and is deeply sorry for his wrongful conduct.  Mr. Linares has no other criminal history.  This offense was aberrant and isolated in a period of time of his life which he has and will continue to suffer for the remainder of his life. As even noted by the Probation Office, Mr. Linares has taken full responsibility for his offense and has assisted the authorities in the investigation and prosecution of his own misconduct by entering a plea.[19]

Mr. Linares has a strong history of employment and is currently employed.   Since 2010, Mr. Linares' desire to live a better life is shown as he has abided by the law and continues to support his children and his family. Additionally, Mr. Linares and his new wife are also currently expecting their first child.   His current wife is not employed and depends on Mr. Linares' employment for support.   Incarceration, as suggested by the Sentencing Guidelines, will deprive his children and his current wife not only of the caretaking duties and financial support currently provided by Mr. Linares, but also will impose significant harm on these minor children.   Compassion and mercy for these children would dictate a grant of probation.

As the Supreme Court noted in *Gall*, "[a]ny term of imprisonment in this case would be counter effective by depriving society of the contributions of the Defendant who, the Court has found, understands the consequences of his criminal conduct and is doing everything in his power to forge a new life."[20]  Mr. Linares' post-offense conduct indicates neither that he will return to criminal behavior nor that he is a danger to society.[21]

---

[19] PSR, ¶¶ 28, 29

[20] *Id.,* at 593 (quoting the District Judge as he explained why he had concluded that the sentence of probation reflected the seriousness of Gall's offense and ***that no term of imprisonment was necessary***) (emphasis added).

[21] *Id.*

1
2
3

    **B.**    *The Guidelines Loss Enhancements to Offense Bases Derived from §2T4.4, "Tax Table" are Arbitrary and Not Based on Empirical Data or National Experience and Result in a Sentence of Imprisonment Which is Greater Than Necessary to Satisfy §3553(a)*

4
5
6
7
8
9

Judges are now invited to consider arguments that the applicable guidelines fail properly to reflect § 3553(a) considerations, reflect an unsound judgment, do not treat defendant characteristics in the proper way, or that a different sentence is appropriate regardless.[22] Judges "may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines."[23]

10
11
12
13
14
15
16

Mr. Linares' base offense level is 16 as per U.S.S.G. §2T1.1(a)(1), which cross references to §2T4.4 and requires application of graduated enhancements from the "Tax Table." The Tax Table is not based on empirical data or national experience is greater than necessary to satisfy § 3553(a).   Where a guideline was not developed based on this "empirical data and national experience," it is not an abuse of discretion to conclude that it "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." [24]

17
18
19
20
21
22
23
24

As with the crack guideline considered by the Supreme Court in *Kimbrough*, the graduated loss enhancements on Tax Table are not based on an "empirical approach based on data about past sentencing practices."[25]   It is not surprising that the loss enhancement guidelines are widely criticized for producing excessive sentences for first-time offenders, largely due to the weight the loss amount is given when determining a sentencing range. Critics focus on the Guidelines' arbitrary arithmetic calculations, which cause ***sentencing ranges that are driven***

25
26
27
28

---

[22] R*ita v. United States*, 551 U.S. 338, 351, 357 (2007).

[23] *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (internal quotation marks and citations omitted).

[24] *Kimbrough*, 552 U.S. at 109-10. *See also Spears v. United States*, 129 S. Ct. 840, 843-44 (2009) ("we now clarify that district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines.").

[25] *See Gall*, 128 S. Ct. at 594 & n. 2 (the guidelines "are the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions [but] notably, not all of the Guidelines are tied to this empirical evidence"); see also *Kimbrough v. United States*, 128 S. Ct. 558 (2007) (authorizing sentence below crack guideline range because guideline was flawed and not based on empirical approach).

principally by "*numbers ... drawn from nowhere.*"[26]

It is clear in this case the result of the application of the loss enhancement based on the Tax Table puts the offense level at 16 based on the tax loss of $181,818, (which Mr. Linares takes responsibility for and will also pay in restitution), *is inconsistent with* §3553 and is accordingly unhelpful to this Court in determining an appropriate sentence for Mr. Linares.[27] As one district court explained:

> [T]he ... Commission chose to focus largely **on a single factor** as the basis for enhanced punishment: the amount of monetary loss or gain occasioned by the offense. By making a Guidelines sentence turn, for all practical purposes, on this single factor, the ... Commission effectively ignored the statutory requirement that federal sentencing take many factors into account, see 18 U.S.C. §3553(a), and, by contrast, effectively guaranteed that many such sentences would be irrational on their face.[28]

Even the Sentencing Commission knows there is a problem, and has been reviewing white collar crimes in "a comprehensive, multi-year study of Sec. 2B1.1 ... and related guidelines [2T1.1], including examination of the loss table and the definition of loss...."[29] That ongoing study has sought input from the bench and bar to determine what amendments to the loss table may be appropriate.[30]   Recognition of the need for reform follows from the constant flow of sentencing decisions featuring the loss enhancement driving Guidelines' sentencing ranges for first time white collar offenders above and beyond what is necessary.

Employing loss based the Guidelines' Tax Table, that is not based on any empirical

---

[26] *See, e.g.*, Jed S. Rakoff, *Why The Federal Sentencing Guidelines Should Be Scrapped*, 26 Fed. Sent'g Rep. 6, 6-9 (October 2013))(emphasis added).
[27] *See Rita*, 551 U.S. a 349-51.
[28] *United States v. Gupta*, 904 F. Supp. 2d 349, 351 (S.D.N.Y. 2012).
[29] 78 Fed. Reg. 51820-51821 (Aug. 21, 2013).
[30]  *See also* American Bar Association, A Report on Behalf of the American Bar Association Criminal Justice Section Task Force on the Reform of Federal Sentencing for Economic Crimes, Second Draft (May 15, 2014), *available                                                                                                                                at* http://www.americanbar.org/content/dam/aba/uncategorized/criminal_justice/economic_crimes.authcheckdam.pdf (last visited October 7, 2016) ("ABA Report")( In 2014, a special task force of the American Bar Association comprised of federal judge, law professors, and criminal attorneys, proposed to the Commission substantial amendments to the Guidelines for economic crimes and changes such as caps in offense levels for first time offenders).

evidence, as the **principal proxy** for culpability in determining Mr. Linares' sentence is contrary to the law, and "irrational" on its face, and therefore substantively "unreasonable."  Instead, this Court must exercise "reasoned sentencing judgment, resting upon an effort to filter the Guidelines' general advice through § 3553(a)'s list of factors."[31]

      **C.**    *Section 3553(a)(3) Kinds of Sentences Available – Probation or Split Sentencing are a Reasonable Options and Authorized by Congress for First Time Non-Violent White Collar Offenders*

Another factor for this Court to consider is "the kinds of sentences available."[32]  The Sentencing Commission ignores the clear language of the statutes and has failed to provide options for first time offenders, such as Mr. Linares, for whom probation meets all of the purposes of sentencing and for whom imprisonment should be the exception, not the norm.   As a result, there are no guidelines advising the sentencing courts how to reach a probation-only range, ignoring the fact that under 18 U.S.C. § 3561(c), Congress authorized probation for a broad range of offenders and offenses.   ***Probation is available for almost any felony with a statutory maximum below twenty-five years***.[33]  Given how high the statutory eligibility for probation reaches, it is manifestly ***unreasonable*** to not impose probation as an alternative sentence.   To not consider probation is in contravention to the Supreme Court's decision in *Kimbrough* where Justice Ginsburg concluded for the Court that the ultimate question is whether a sentence is "reasonable" and, if a sentencing judge reasonably assesses the

---

[31] *Rita v. United States*, 551 U.S. 338, 351 (2007).
[32] 18 U.S.C. § 3553(a)(3).
[33] *See* 18 U.S.C. §3561(a)(1), referencing §3559(a); *See also United States v. Whitehead*, 532 F.3d 991 (9th Cir. 2008) (affirming a downward variance to probation in a case involving the sale of counterfeit access cards in violation of the Digital Millennium Copyright Act based in part on the district court's finding that the defendant's crime A[di]d not pose the same danger to the community as many other crimes").

circumstances in the case, *the judge is not locked into the guidelines and is free to disagree with the guideline ranges*.[34]

In 2009, the Sentencing Commission has actually turned to the credible study of sentencing alternatives to prison, partially to address the problems created by the exponential growth in the prison population, especially in the federal system.[35]

> Effective alternative sanctions are important options for federal, state, and local criminal justice systems. *For the appropriate offenders, alternatives to incarceration can provide a substitute for costly incarceration*. Ideally, alternatives also provide those offenders opportunities by diverting them from prison (or reducing time spent in prison) and into programs providing the life skills and treatment necessary to become law-abiding and productive members of society.[36]

According to the Sentencing Commission, in its supplement report that gathered sentencing data since, since post *Booker*, from 2006 to 2014, District Courts have imposed alternative sentencing (all types of probation or split sentencing) 57.5% of the time, or more, for first time offenders with Guideline sentencing ranges in Zone C of the Sentencing Table.[37] Within these imposed alternative sentences, the "[r]ates of probation-only sentences increased for offenders with sentencing ranges in Zone C" from 13.5% in 2005 to 22.8% in 2014.[38]

A conviction itself, even with a probationary sentence, *can be considered a significant penalty*. As the Supreme Court noted in *Gall*, "probation, rather than 'an act of leniency,' is a

---

[34] *Kimbrough*, 128 S. Ct. at 576; *see also United States v. Ruff*, 535 F.3d 999, 1004 (9th Cir. 2008)("The original below-guideline sentence was reasonable in light of the mitigating factors the judge discussed in detail during the May 1 hearing"); *Cf. Gall*, 128 S. Ct. at 592-93, 598-602(holding that a sentence of 36 months' probation when the applicable guideline range recommended 30 to 37 months imprisonment was reasonable based on district court's reasoning); *Whitehead*, 532 F.3d at 992-93 (affirming below-guideline sentence post-*Gall* based on district court's reasoning).

[35] *See* U.S. Sentencing Commission, Alternative Sentencing in the Federal Criminal Justice System (Jan. 2009), *available at* http://www.ussc.gov/Research/Research_Projects/Alternatives/20090206_Alternatives.pdf (last visited October 7, 2016).

[36] *Id.* (emphasis added).

[37] *See* PSR, ¶72 ("[…] the applicable guideline range is in Zone C"); *See* Supplement to 2009 Report: U.S. Sentencing Commission, Alternative Sentencing in the Federal Criminal Justice System (May 2015), Figure 8, p. 9, *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/alternatives/20150617_Alternatives.pdf (last visited October 7, 2016).

[38] *Id.*

'substantial restriction of freedom.'"[39]  The Supreme Court recognized that prison sentences are qualitatively more severe than probationary sentences of equivalent terms.  However, offenders on probation are nonetheless "subject to several standard conditions that substantially restrict their liberty."[40] There are many liberty restrictions, for example, probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court.[41] Mr. Linares would be mandated to report regularly to his probation officer, permit unannounced visits to his home, refrain from associating with any person convicted of a felony, and refrain from excessive drinking.[42] Most probationers are also subject to individual "special conditions" imposed by the court.[43]  Examples of these restrictions in liberty, as noted by the Court and as Mr. Linares will have to endure:

> Gall will have to comply with strict reporting conditions along with a three-year regime of alcohol and drug testing. He will not be able to change or make decisions about significant circumstances in his life, such as where to live or work, which are prized liberty interests, without first seeking authorization from his Probation Officer or, perhaps, even the Court. Of course, the Defendant always faces the harsh consequences that await if he violates the conditions of his probationary term.[44]

For policy purposes, any alternative sentence that lessens the amount of prison time imposed by this Court upon a first time non-violent white collar offender will be more ideal than adding another inmate incarcerated in our already crowded prisons.    In *Kimbrough v. United States*, the Court further loosened the reins on sentencing courts by allowing them to depart from the guidelines- recommended sentence ***even when they do so because of a disagreement with a policy decision by the sentencing commission***.[45] Alternatives to prison,

---

[39] *Gall v. United States*, 128 S. Ct. 586, at 593 (quoting district judge).
[40] *Id.* at 596.
[41] *Id.*
[42] *Id.; See* USSG §5B1.3 Conditions of Probation.
[43] *Id.*
[44] *Id.* at 596.
[45] 128 S. Ct. 558 (2007) (emphasis added).

and increasing probation sentences for first time nonviolent and other eligible offenders as determined by sentencing courts will slow the growth of the prison population and will mitigate the effect that incarceration has on the families and communities of the incarcerated.   And as discussed below and trending in the Ninth Circuit, downward variances to alternative sentences will assist the sentencing judges who seek to avoid the harshness of the narrow and unreasonable range of options provided by the Guidelines through these variances and thus resulting in fewer unwarranted disparities.

> **D.    *Section 3553(a)(4) – Downward Variance of Alternative Sentences will not Result in Unwarranted Sentencing Disparities and will Promote Consistency in Sentencing***

It is well-established that Guidelines sentences may create unwarranted sentencing disparities, however, in this case, imposition of the proposed downward variation in Linares' sentence would indeed avoid any disparities.[46]   As instructed by the Supreme Court:

> "[s]ection 3553(a)(6) directs district courts to consider the need to avoid unwarranted disparities along with other § 3553(a) factors when imposing sentences. Under this instruction, district courts must take account of sentencing practices in other courts and the "cliffs" resulting from the statutory mandatory minimum sentences. To reach an appropriate sentence, these disparities must be weighed against the other § 3553(a) factors and any unwarranted disparity created […]. [47]

Taking into account the sentencing practices in all federal circuits as well as the Ninth Circuit, the statistics released by the Sentencing Commission for fiscal year 2015 confirm the trend towards downward variances for first offender, non-violent, fraud cases, and at the same time validate Mr. Linares' probation grant request.[48]

---

[46] See *Kimbrough*, 552 U.S. at 91.
[47] *Id.* at 89.
[48] United States Sentencing Commission Statistical Information Packet Fiscal Year 2015, Ninth Circuit, *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2015/9c15.pdf (last visited October 7, 2016).

In the fiscal year of 2015, 13,040 total cases were sentenced in the Ninth Circuit.[49]  Of these total cases, only 27.7% were sentenced within the Sentencing Guideline range and only 2% were sentenced above the Guideline Range.[50]  9,164, or 70.3%, of the total cases sentenced, the sentencing courts sentenced ***below the guideline ranges***.[51]  On a national level, Defendants whose primary offense was fraud and were eligible for probation under 18 U.S.C. §3561(c)(1), such as Mr. Linares, 62.4% ***were given non-prison sentences*** and within the Ninth Circuit, 52.8% were given non-prison sentences.[52]

These statistics clearly illustrate that other sentencing courts, including in the Ninth Circuit, have accepted that the fraud Guidelines advised by the Sentencing Commission are of limited utility and have imposed downward variances outside the Guidelines.   An alternative sentence to incarceration, in this case will not result in any disparity and will promote a sentence that is consistent within the Ninth Circuit and all district courts throughout the nation.

## IV.    CONCLUSION

Pursuant to 18 U.S.C. §3561(c)(1), Mr. Linares is eligible for probation.  Based on the reasons outlined above, a sentence of probation or, in the alternative, a split sentence, would be "sufficient, but not greater than necessary" to comply with the goals of sentencing.   Therefore, Mr. Linares humbly asks this Court to impose probation.   In the alternative, if this Court believes that a guidelines sentence, with an offense level of 13 is the appropriate punishment, Defendant requests a low end sentence of 12 months as follows: 6 months in custody, followed by 6 months of home confinement.

---

[49] *Id.*, at p. 11, Table 8.
[50] *Id.*
[51] *Id.*
[52] *Id.*, at p. 9, Table 6.

DATED this 12th day of October, 2016.

LAW OFFICE OF DAVID R. FISCHER

  /s/ David R Fischer
DAVID R. FISCHER, ESQ.
400 South 4th Street, Suite 500
Las Vegas, Nevada 89101
*Attorney for Defendant*

## CERTIFICATE OF ELECTRONIC SERVICE

I HEREBY CERTIFY that I am an employee or agent of the LAW OFFICE OF DAVID R. FISCHER and am a person of such age and discretion as to be competent to serve papers.

That on the 12th day of October, 2016, I served an electronic copy of the above and foregoing **DEFENDANT'S SENTENCING MEMORANDUM** by electronic service (ECF) to the persons named below:

> J. Gregory Damm, Esq.
> Assistant United States Attorney
> 333 Las Vegas Boulevard South
> Suite 5000
> Las Vegas, NV 89101
> (702) 388-6336

　　　　　　　　　　　__/s/ David R Fischer_____
　　　　　　　　　　　DAVID R. FISCHER, ESQ.
　　　　　　　　　　　*Attorney for Defendant*